**Stanley A. SAMAD, Plaintiff–Appellant,**

v.

**Donald M. JENKINS; the University of Akron, School of Law; John Doe I; John Doe II; Board of Trustees of the University of Akron, Defendants–Appellees.**

No. 87–3527.

United States Court of Appeals, Sixth Circuit.

Submitted April 1, 1988.

Decided May 6, 1988.

Stephen G. Thomas, Thomas & Boles, Chagrin Falls, Ohio, Lisa R. Kraemer, for plaintiff-appellant.

Edwin L. Parms, J. Bruce Hunsicker, John E. Holcomb, Millisor, Belkin & Nobil, Akron, Ohio, for defendants-appellees.

Before KEITH, MARTIN and NELSON, Circuit Judges.

BOYCE F. MARTIN, Jr., Circuit Judge.

Stanley A. Samad appeals the decision of the district court granting summary judgment to defendants Donald M. Jenkins, individually and in his capacity as Dean of the School of Law, University of Akron, the University of Akron, School of Law, and John Does I and II. Plaintiff argues on appeal that the district court erred in granting the defendants' motions for summary judgment on the plaintiff's § 1983 claims, and in granting the defendant's motion for a protective order concerning a file created by defendants in preparation for the termination of plaintiff.

Samad served as Dean of the School of Law at the University of Akron from 1959 until 1979, when he returned to teaching. Jenkins replaced the plaintiff as Dean. During the early 1980's, a series of disputes arose between Samad and the law school. In 1984, the President of the University wrote a letter to Samad informing him that proceedings would be commenced to terminate him for cause. Shortly thereafter, the disputes between Samad and the law school and the University were resolved. A settlement was entered into, the terms of which were embodied in a Settlement Letter that was sent from Samad to the President of the University. This letter, dated February 14, 1984, was officially approved and ratified by action of the University Board of Trustees.

The Settlement Letter provided that Samad would be allowed to complete the regular 1983–1984 school year and to teach an independent research section at the law school in Summer Session I, ending July 14, 1984. In the fall of 1984, Samad was to take a paid leave of absence. During the spring semester, 1985, the Letter provided that Samad would receive a non-teaching assignment from the Provost. He was to be paid a salary of $46,725 for the aca-

demic year 1984–85. After expressing his desire to pursue limited teaching upon his retirement, Samad makes clear in the letter that he understood that such assignments would not involve the law school. Specifically, he stated in the Settlement Letter:

I understand and agree that I shall have no office or staff services available to me at the School of Law, and that I may not teach any courses or be otherwise engaged to perform any services for the School of Law subsequent to July 14, 1984.

At the time of this lawsuit, the plaintiff was still employed by the University in accordance with the agreement.

After Summer Session I was over on July 14, 1984, Jenkins, as the Dean of the law school, had no supervisory employment power over Samad. On July 2, 1984, Jenkins wrote to Samad a letter reviewing their agreement:

As we approach the end of Summer Session I, I thought it would be advisable to review the agreement entered between you and the University dated February 14, 1984 and to inform you of the School's position.

Per the referenced agreement, your relationship at the University will be administered by the Office of the Provost subsequent to July 14, 1984. The School of Law fulfilled its portion of the agreement as of the end of Summer Session I. Also, in accordance with the agreement, it is requested that you arrange to vacate your present office in the C. Blacke McDowell Law Center no later than July 14, 1984. This move will terminate your relationship with the School of Law.

For reasons not entirely clear, Jenkins wrote a second letter to Samad on July 3, 1984. That letter, which triggered this suit, advises Samad that the evidence already gathered for the termination proceeding would be preserved should the plaintiff not retire as agreed:

All of this evidence has been preserved in written form. . . . If you should opt to resurrect an attack on the University, the School of Law, its past or present

personnel, or any past or present student, anonymously or otherwise, and it would appear that any evidence would be relevant to identify you as the source of such an attack or reflect upon your conduct or veracity, then any pertinent data will be released to help place matters in their proper perspective.

On July 1, 1986, the plaintiff brought this suit against the defendants, asserting federal question jurisdiction under 42 U.S.C. § 1983. As a basis for his federal causes of action, plaintiff claimed that he had been deprived of certain rights guaranteed under the fourteenth and first amendments to the U.S. Constitution. He also asserted various pendent state law claims, including defamation, invasion of privacy, intentional infliction of emotional distress, and violation of a statutory right of access to information under Chapter 1347 of the Ohio Revised Code.

The University and Jenkins moved to dismiss the complaint for failing to adequately allege a viable § 1983 claim. By order of February 10, 1987, the court determined that it would treat the motions to dismiss as motions for summary judgment under Rule 56. Fed.R.Civ.P. 56. On March 9, 1987, the court gave Samad additional time to conduct discovery and to file additional materials. Prior to the discovery cut-off date, however, a discovery dispute arose over the production of a certain file that had been maintained for use in connection with the potential employment termination proceedings against Samad. In response to plaintiff's motion to compel production and the defendant's motions for a protective order, the court below granted a discovery protective order, protecting the contents of that file from production. Six days later, on April 20, 1987, the court below granted summary judgment to the defendants, finding that plaintiff had not adequately established a viable claim under 42 U.S.C. § 1983. The court declined to exercise pendent jurisdiction over the state law claims and dismissed them without prejudice. Plaintiff has assigned error on appeal to the decisions of the district court granting defendants a protective order and dismissing plaintiff's § 1983 claims.

Plaintiff argues on appeal that the defendants' actions have deprived him of personal liberties and property rights and privileges guaranteed to him by the fourteenth amendment, in violation of § 1983. Specifically, plaintiff argues that he has had to suffer humiliation and damage to his reputation, and that he has been denied the opportunity to be designated a Professor Emeritus at the University. Plaintiff argues that Dean Jenkins' conduct constituted a material deprivation of that status and a taking of property in contravention of plaintiff's substantive rights under the Due Process Clause of the fourteenth amendment. We disagree.

We note, as an initial matter, that a procedural due process claim is applicable to state action only when the party making the claim can prove that he is being denied property or liberty. *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). As this court has stated before:

> Without a "property" or "liberty" interest protected by the Due Process Clause, plaintiff would have no federally protected right, even if it be assumed that the statement of reasons for charges placed in her personnel file were false. Rather, her right of action would exist exclusively in state courts.

*Sullivan v. Brown*, 544 F.2d 279 (6th Cir. 1976). We do not believe Samad has demonstrated, or can demonstrate, that he has been deprived of any rights secured by the fourteenth amendment.

We believe there must be a substantial, tangible harm and a material change to an employee's status before the employee possesses a viable § 1983 cause of action based upon the fourteenth amendment. We cannot find anywhere in the record where Samad has alleged that the University or Jenkins took any steps that significantly and materially impaired plaintiff's agreed employment status. Virtually all of the plaintiff's § 1983 claims are founded upon intangible harms. In fact, plaintiff is not able to make a claim alleging a substantive adverse action regarding his employment status. This is because he

had voluntarily entered into a settlement of employment disputes in February 1984 that called for his voluntary retirement or resignation at the conclusion of an agreed phase-down of his faculty status. The University has not, in any way, failed to live up to its agreement. We specifically reject plaintiff's argument that he was denied his property rights when he was not granted emeritus status. Such status can be afforded only if the Law School faculty votes favorably to do so. The Settlement Letter of February 14, 1984 makes no mention that the school must put Samad's name to a vote. In fact, the implication is clearly to the contrary. Finally, we do not believe that plaintiff possesses a property right, in the absence of such a Settlement Letter, to force the faculty to vote. Accordingly, we affirm the decision of the district court holding that plaintiff has failed to assert a viable § 1983 claim based upon the fourteenth amendment.

█ Plaintiff also argues on appeal that the Jenkins' July 8, 1984 letter "tended to compel" Samad not to exercise his rights of free speech under the first amendment, in contravention of § 1983. Plaintiff attempts to argue that the letter served as a threat to him and chilled his right to free speech. We find no merit in this argument. In *Gordon v. Warren Consolidated Bd. of Educ.*, 706 F.2d 778 (6th Cir.1983), we held that "the mere and proper use of information" is not itself actionable under the civil rights statutes. We also held that such a mere "subjective chilling" of first amendment rights by virtue of a possible misuse of the collected information did not create a federally justiciable controversy. We affirm, therefore, the decision of the district court that a mere threat of embarrassment, absent a threat to take action tangibly affecting employment status, is not actionable under § 1983. Ironically, plaintiff is accusing defendants of chilling his first amendment freedoms by reserving their own first amendment right to speak out.

We are not persuaded by plaintiff's reliance on *Bart v. Telford*, 677 F.2d 622 (7th Cir.1982) as a basis for his argument that he suffered a series of "harassments" that constitute a basis for a § 1983 claim. In *Bart*, an employee who had run for political office, and who had lost, was subjected to a campaign of harassment at the office, designed to punish her for her candidacy and the views she had espoused. We find this to be a far cry from the situation at issue here. Here, the alleged "harassment" was consistent with the terms of an agreed settlement between the parties and, furthermore, the plaintiff here is at most able to show a subjective chill of his first amendment rights.

█ The final assignment of error raised by plaintiff is that the district court erred when it granted Jenkins' motion for a protective order pursuant to Fed.R.Civ.P. 26(c). The decision to grant a protective order will be disturbed on appeal only upon a finding of an abuse of discretion. *Davis v. Marathon Oil Co.*, 528 F.2d 395 (6th Cir.1975). We do not believe that the lower court abused its discretion in granting the order in this case. We believe that regardless of the contents of the file, which was put together in anticipation of adversary hearings on plaintiff's termination from the University, plaintiff cannot make out a claim under § 1983. The file does not impact on plaintiff's ability to demonstrate the denial of a federally protected right. While we affirm the decision of the district court to issue a protective order, we do not offer any opinion as to whether Samad possesses a viable state law claim under Chapter 1347 Ohio Revised Code or other authority. We affirm the decision of the district court declining to exercise pendent jurisdiction over the state law claims, given its dismissal of plaintiff's § 1983 claims.

Accordingly, the decision of the district court is affirmed.