CSX TRANSPORTATION,
INC., Plaintiff,

v.

UNION TANK CAR COMPANY, Procor Limited, Midland Manufacturing Corp., CMS Marysville Gas Liquid Co., Kinetic Resources, Interstate Forging Industries, Inc., Carlson Metal Specialties Corp., PanCanadian Petroleum Corp., Defendants.

No. 01–70299.

United States District Court,
E.D. Michigan,
Southern Division.

Oct. 22, 2001.

Robert M. Anspach, Anspach & Serraino, Toledo, OH, Michael J. Sheridan, Dearborn, MI, for Plaintiff.

Thomas R. Bowen, Bowen, Anderson, Troy, MI, George W. Steel, Harvey, Kruse, Flint, MI, Charles S. Hagarty, Bodman, Longley, Detroit, MI, Harrison C. Stackpole, Ogne, Alberts, Troy, MI, Michael G. Oliva, Loomis, Ewert, Lansing, MI, Margaret A. Costello, mcostello@dykema.com, Dykema Gossett, Detroit, MI, Edward M. Freeland, Garan Lucow, Troy, MI, James K. Thome, Vandeveer Garzia, Troy, MI, Edward C. Cutlip, Jr., Kerr, Russell, Detroit, MI, for Defendants.

## OPINION AND ORDER DENYING DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT ON PLAINTIFF'S CLAIM FOR CONTRIBUTION

BORMAN, District Judge.

Before the Court is Defendants Union Tank Car Company's and Procor Limited's Motion for Partial Summary Judgment on Plaintiff's Claim for Contribution (Docket Entry # 16). This motion was joined by Defendant Midland Manufacturing Corp. (Docket Entry # 27) and Defendant Carlson Metal Specialties Corp. (Docket Entry # 40). The Court heard oral argument on this motion on October 15, 2001. Upon consideration of the motion, the submissions of the parties, and the applicable law, the Court will DENY the motion.

### I. BACKGROUND

This case centers around an incident which occurred on January 21, 2000 when a rail tank car containing propane gas caught fire while traveling on the CSX railroad, en route to Flint, Michigan. Government agencies evacuated the area surrounding the rail yard for approximately one square mile. The fire was brought under control late that evening, but not before it caused serious damage to the surrounding area. As a result of the fire, CSX Transportation entered into numerous settlements (allegedly over 3600 claims, see Amended Compl. ¶ 71) with individuals and entities damaged by the fire.

Plaintiff CSX Transportation, Inc. ("CSXT") is the railroad company which owns/operates the McGrew Rail Yard in

Flint, Michigan. Defendant Union Tank Car Company ("UTC") constructs rail tank cars, including the rail tank car which caught fire on January 21, 2000 (Rail Tank Car No. UTLX 87861). Defendant PanCanadian Petroleum Company owned and was the lessor of the rail tank car. Defendant Procor Limited ("Procor") performed an inspection on the rail tank car in January of 1999, in Sarnia, Ontario, Canada.[1] Defendants Midland Manufacturing Corp., Interstate Forging Industries, and Carlson Metal Specialists, manufactured component parts of a pressure relief valve for the rail tank car. Defendant Kinetic Resources owned the propane gas which was aboard the rail tank car. Defendant CMS Marysville Gas Liquids Company filled the rail tank car with the propane gas owned by Defendant Kinetic Resources. Defendants retained CSXT to haul the rail tank car. Plaintiff CSXT alleges that the fire started as a result of a cracked pressure relief valve on the rail tank car.

Plaintiff CSXT filed its complaint on January 22, 2001, alleging claims for negligence, gross negligence, breach of implied warranties, products liability (manufacturing defect and failure to warn), indemnification, and contribution. On August 8, 2001, Magistrate Judge Kornives granted Plaintiff CSXT's motion to amend its complaint to add three additional defendants (Interstate Forging Industries, Carlson Metal Specialties, and PanCanadian Petroleum Co.).

Defendants Union Tank Car Co. ("UTC") and Procor Limited ("Procor") filed their motion for partial summary judgment as to Plaintiff's claim for contribution on June 28, 2001.

## II. ANALYSIS

Defendants UTC and Procor[2] allege that under FED.R.CIV.P. 12(b)(6), Plaintiff CSXT's claim for contribution must be dismissed. A Rule 12(b)(6) motion alleges that a complaint has failed to state claim upon which relief can be granted. In evaluating such a motion, the court construes the complaint in the light most favorable to the plaintiff, accepts all factual allegations in the complaint as true, and determines whether the plaintiff undoubtedly can prove no set of facts in support of the claims that would entitle relief. *See Bloch v. Ribar*, 156 F.3d 673, 677 (6th Cir.1998); *see also Morgan v. Church's Fried Chicken*, 829 F.2d 10, 11 (6th Cir.1987).

The purpose of a 12(b)(6) motion is "to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir.1993). Accordingly, when reviewing a Rule 12(b)(6) motion to dismiss, the court only examines whether the pleadings state a claim for which relief may be granted, and does not review additional evidence. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997).

A cause of action for contribution in Michigan is controlled by statute. MICH. COMP.LAWS ANN. § 600.2925a, in relevant part, provides as follows:

(1) [W]hen 2 or more persons become jointly or severally liable in tort for the

---

1. Plaintiff's complaint alleges that Procor and/or PanCanadian leased the rail tank car. Procor denies leasing the tank car, but admits to performing an inspection of it in January of 1999. (Def. Procor's Motion to Dismiss, at 1.) This issue is immaterial as to the instant motion.

2. As noted above, Defendants Midland Manufacturing and Carlson Metal have joined UTC and Procor in requesting dismissal of Count V—Plaintiff's contribution claim. Defendants Kinetic, CMS Marysville, Interstate Forging, and PanCanadian have not filed any pleadings on this issue.

same injury to a person ..., there is a right of contribution among them even though a judgment has not been recovered against all or any of them.

(2) The right of contribution exists only in favor of a tort-feasor who has paid more than his pro-rata share of the common liability and his total recovery is limited to the amount paid by him in excess of his pro rata share.

(3) A tort-feasor who enters into a settlement with a claimant is not entitled to recover contribution from another tortfeasor if any of the following circumstances exist:

(a) The liability of the contributee for the injury ... is not extinguished by the settlement.

(b) A reasonable effort was not made to notify the contributee of the pendency of the settlement negotiations.

(c) The contributee was not given a reasonable opportunity to participate in the settlement negotiations.

(d) The settlement was not made in good faith.

MICH.COMP.LAWS ANN. § 600.2925a(1)–(3).

In 1995, Michigan enacted tort reform legislation. 1995 PA 161, 1995 PA 249. One of the major changes accomplished by the legislation was the elimination of joint and several liability in almost all cases. Instead, the Michigan legislature mandated "that the liability of each person shall be allocated in direct proportion to the person's percentage of fault." MICH.COMP. LAWS ANN. § 600 .2957(1). Now, when a factfinder is faced with more than one defendant at fault for an injury, the factfinder must allocate percentages of fault to each defendant, whether or not all tortfeasors are named as defendants. The tort reform legislation did not repeal MICH. COMP.LAWS ANN. § 600.2925a.

A reading of all the statutory provisions at issue (*in pari materia*) uncovers the meaning of the tort reform legislation.

Through 1995 PA 161, the Michigan state legislature enacted MICH.COMP.LAWS ANN. § 600.2956, which reads, in relevant part: "the liability of each defendant for damages is several only and is not joint." Through 1995 PA 161 and 1995 PA 249, the legislature modified MICH.COMP.LAWS ANN. § 600.6304, which similarly provides: "[l]iability in an action to which this section applies is several only and not joint." MICH.COMP.LAWS ANN. § 600.6304 further provides for a procedure whereby the factfinder is to allocate the percentage of fault among the tortfeasors.

The statutory cause of action for contribution, MICH.COMP.LAWS ANN. § 600.2925a, was neither modified nor repealed by either 1995 PA 161 or 1995 PA 249. Most importantly, it provides that "when 2 or more persons become jointly *or* severally liable in tort ... there [exists] a right of contribution." (emphasis added).

■ If one confuses the terms "common liability," "joint liability," "several liability," and "joint and several liability," one might come to the erroneous conclusion that contribution is no longer a viable cause of action in Michigan. However, that is not the case.

Plaintiff CSXT is seeking an allocation of fault between the tortfeasors in this case. It is seeking neither "joint liability," nor "joint and several liability." Plaintiff CSXT is entitled, under Michigan law, to show that the Defendants and Plaintiff CSXT were/are severally liable (with an appropriate allocation of the percentages of fault) for the rail tank car accident in January of 2000.

Because currently, in the usual case, the allocation of fault is mandated, there will usually not be a circumstance where a

tortfeasor has paid more than his pro-rata share of the common liability. Thus, there would be no need for a claim for contribution. This is what *Kokx v. Bylenga*, 241 Mich.App. 655, 617 N.W.2d 368 (2000) explained. In that case, a defendant attempted to bring a contribution claim against a party for the wrong at issue. The court held that the defendant had no such claim, because that party would never be able to claim it had paid more that its pro-rata share of the liability, because the liability had to be allocated by percentage of fault.

■ In the instant case, Plaintiff CSXT is seeking an allocation of fault under Michigan law. Because CSXT has settled numerous lawsuits, paying the full share of each, CSXT can assert that it has paid more than its pro-rata share of the liability. Thus, under Michigan law, it has a claim for contribution.

If the purposes behind the Michigan tort reform legislation were speedy settlement of suits, and allocation of fault, thwarting CSXT's ability to seek contribution defies both of those objectives. First, without the possibility of seeking "reimbursement" from other tortfeasors, CSXT would have no interest in seeking a speedy settlement of claims. Further, allowing CSXT to bring a claim for contribution furthers the purpose of holding tortfeasors responsible for their share of the liability.

A brief example explains a possible misunderstanding of the effect of the tort reform legislation. Assume two tortfeasors are equally responsible for an injury. Prior to the tort reform legislation, they could each be held liable for 100% of the injury. If one defendant paid the entire balance, he could sue the second defendant for contribution. However, after the tort reform legislation abolished joint and several liability (in nearly all cases, and the exceptions are irrelevant here), each could only be held for 50% of the injury. Therefore, there would be no need for an action for contribution.

This does not mean that a cause of action for contribution was completely extinguished by the legislation; it simply means that in the usual case, it would not be needed. This is bolstered by the fact that the legislature did not repeal the contribution statute.

In the instant case, the claims have been settled without an allocation of fault. One tortfeasor has paid 100%, although there are likely other tortfeasors which can be allocated some of the fault. The statute permits a claim for contribution in this situation—Plaintiff CSXT can allege that it has paid more than its pro-rata share of the liability. The tort reform legislation did not erase this right.[3]

### III. ORDER

Because CSXT can properly assert a claim for contribution, Defendants UTC's and Procor's motion for partial summary judgment as to contribution is DENIED.

SO ORDERED.

---

3. For an example of a post-reform legislation case which assumed the availability of an action for contribution, but dismissed it under the facts of that case, see *Moisenko v. Volkswagen AG,* 10 F.Supp.2d 853 (W.D.Mich. 1998).