NOT RECOMMENDED FOR PUBLICATION
File Name: 08a0492n.06

Filed: August 13, 2008

NO. 07-3483

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ROBERT KINKUS,

       Plaintiff-Appellee,

v.

VILLAGE OF YORKVILLE, OHIO,

       Defendant,

and

GARY ANDERSON;  JAMES POPP

       Defendants-Appellants.

_____/

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE SOUTHERN
DISTRICT OF OHIO

BEFORE:  SUHRHEINRICH, CLAY, and COOK, Circuit Judges.

       **SUHRHEINRICH, Circuit Judge.**   Defendants James Popp and Gary Anderson appeal

from the district court's denial of qualified immunity in this § 1983 action brought by Robert Kinkus.

The Village of Yorkville, Ohio also appeals the district court's grant of summary judgment for

Kinkus on his municipal liability claim.  For the reasons that follow, we reverse, and dismiss

Kinkus's constitutional claims.

## I.  BACKGROUND

### A.  Facts

       Yorkville is a village in the Ohio Valley with a population of about 1,200 people.  At the

time of the relevant events in this case, Plaintiff Robert Kinkus ("Kinkus") was a member of the

Yorkville Village Council and the assistant fire chief for the Yorkville Fire Department.

Kinkus was an outspoken critic of Defendant Gary Anderson ("Anderson"), Yorkville's chief of police, and had publicly criticized Anderson at council meetings. In particular, Anderson criticized the Yorkville Police Department's arrest and alleged assault of three young men, one of whom was Kinkus's grandson. Anderson was aware of Kinkus's comments.

The facts giving rise to the incident in question occurred on September 18, 2004, when weather conditions caused a flood in Yorkville. Many of Yorkville's streets were closed to traffic due to rising floodwaters, including Fayette Street, on which Kinkus's residence was located. On that day Defendant James Popp ("Popp"), a Yorkville police officer, and Yorkville fireman Jim Bailey ("Bailey") agreed to temporarily remove some barricades blocking Fayette Street, so that a Yorkville resident could move her vehicle from her home. After they moved the barricades, Popp and Bailey observed a white jeep, contrary to the barricades, park in the middle of Fayette street directly in front of Kinkus's residence. They decided to walk toward the jeep to determine why it was blocking the street, and encountered Kinkus as they came near the jeep.

Kinkus claims Popp first asked how long the jeep was going to be parked in the middle of the street. Kinkus replied that the jeep would remain parked there "[u]ntil the freaking water goes down." Kinkus told Bailey that his daughter stopped at the firehouse to request help during the flood, and was told "nobody could help because they were busy." He then said:

> I've been here for seven or eight hours, the fire truck has been running up and down the street, doing nothing, the guys are standing in front of the city building, and I can't get no help. . . . [T]he best thing for you guys to do is to get the hell back up town, period.

At that point, Kinkus contends that the conversation ended and Popp and Bailey departed. Kinkus

admitted that he was upset about cars driving across the street, but claims that he did not use any profanity during the course of the conversation.[1] The parties dispute whether Popp requested that Kinkus move the jeep from its parked location. There is no dispute, however, that Kinkus did not move the jeep from the street after his conversation with Popp.

No charges were brought against Kinkus on the day of the flood. Popp subsequently discussed the altercation with Yorkville's chief of police, Defendant Anderson. Anderson asked Popp why he had not filed charges, and Popp explained that he was afraid of losing his job as a result of Kinkus's threats. Anderson assured Popp that his job was secure and described the procedure for bringing charges. Popp completed a police report, to which a written statement from Bailey was included, and signed a criminal complaint form in blank. In filling out the complaint, Popp left blank the portion of the form specifying the particular charge. These materials were sent to Assistant Belmont County Prosecutor William Thomas ("Prosecutor Thomas") for his review.

The prosecutor issued a criminal complaint against Kinkus, and filed it on October 21, 2004, in the Belmont County Court, charging Kinkus with disorderly conduct under Ohio Rev. Code § 2917.11(A)(2) for his actions on the day of the flood. This provision of Ohio's disorderly conduct law provides that "[n]o person shall recklessly cause inconvenience, annoyance, or alarm to another by . . . [m]aking unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person." Ohio Rev. Code § 2917.11(A)(2). Disorderly conduct is a "misdemeanor of the fourth degree" when "committed in

_____

[1]Kinkus's contention that he did not use profanity is contradicted by the factual findings of the trial court judge at Kinkus's state court trial for disorderly conduct. The judge found that Kinkus did use profanity during the course of the verbal exchange.

-3-

the presence of any law enforcement officer." Ohio Rev. Code § 2917.11(E)(2), (E)(3)(c).[2] Kinkus was presented with a criminal summons, and was not arrested or jailed as a result of the criminal complaint.[3]

The case proceeded to a bench trial in the Northern Division County Court of Belmont County, Ohio, and Kinkus was acquitted of the disorderly conduct charge. In its decision dismissing the case, the court found that on the day of the flood, Kinkus was acting in his private capacity–rather than official capacity–as an assistant fire chief and Yorkville councilperson. The court further found that Kinkus "parked on the road, used vulgarity addressed to [Popp] who was simply trying to help the situation, questioned [Popp] if he had a 'f___ing' problem, advised [Popp] that this was "my god damn street," and admitted that his actions were to protect his own home and not necessarily the community itself or at large." The court found, however, that because Kinkus's words did not constitute "fighting words," the court could "not find the evidence sufficient in this case beyond a reasonable doubt that [Kinkus] has committed a criminal act."

## B. Procedural History

On October 11, 2005, Kinkus filed suit under 42 U.S.C. § 1983 against Popp, Anderson, and Yorkville. Kinkus's complaint raised claims of Fourth Amendment malicious prosecution against Popp, First Amendment retaliatory prosecution against Popp and Anderson, and a municipal liability

---

[2]A fourth-degree misdemeanor carries a potential jail term of up to thirty days and a fine of up to $250.00. Ohio Rev. Code §§ 2929.24(A)(4); 2929.28(A)(2)(a)(iv).

[3]Because the disorderly conduct charge was a misdemeanor, a grand jury was not required to pass judgment on whether there was probable cause to charge. *See City of Cleveland Heights v. Perryman*, 457 N.E.2d 926, 930 (Ohio Ct. App. 1983) ("[A] misdemeanor complaint can be issued by a prosecutor or a law enforcement officer without grand jury involvement.").

claim against Yorkville.[4]

On January 10, 2006, Kinkus moved for partial summary judgment against Popp on his First Amendment retaliation claim and Fourth Amendment malicious prosecution claim. The district court granted the motion, finding that: (1) Popp filed a disorderly conduct charge against Kinkus without probable cause; (2) Prosecutor Thomas's independent decision to prosecute Kinkus was not conclusive evidence of probable cause; and (3) Kinkus's statements toward Popp on the day of the flood were protected by the First Amendment because they did not rise to the level of "fighting words." *Kinkus v. Village of Yorkville*, 453 F. Supp. 2d 1009 (S.D. Ohio 2006). The district court did not, however, resolve the issue of whether Popp and Anderson acted with retaliatory intent when they caused Kinkus to be prosecuted. The Defendants' motion for reconsideration was denied. *Kinkus v. Village of Yorkville*, No. C2-05-930, 2007 WL 539535 (S.D. Ohio Feb. 15, 2007).

Kinkus moved for summary judgment against Popp and Anderson on his retaliation claim and against Yorkville on the municipal liability claim. Popp and Anderson moved for summary judgment, arguing that they were entitled to qualified immunity, and Yorkville moved for summary judgment on the municipal liability claim.

On March 13, 2007, the district court: (1) denied Popp's and Anderson's motions for qualified immunity on the retaliation claims; (2) granted summary judgment for Kinkus on the retaliation claim against Anderson; (3) denied Kinkus summary judgment on his retaliation claim against Popp; (4) denied Yorkville's motion for summary judgment on the municipal liability claim;

---

[4]Kinkus also alleged that the acts of the Defendants "constituted an unlawful civil conspiracy to violate [his] rights." The district court docket indicates that on March 16, 2007, Kinkus moved for the dismissal of his civil conspiracy claim without prejudice. The parties have not addressed this claim on appeal.

and (5) granted summary judgment for Kinkus on the municipal liability claim. *Kinkus v. Village of Yorkville*, 476 F. Supp. 2d 829 (S.D. Ohio 2007).

## II. ANALYSIS

On appeal, Popp and Anderson argue that the district court erred in denying them qualified immunity, and in granting Kinkus summary judgment on his municipal liability claim.

We review a district court's denial of qualified immunity de novo. *Gregory v. City of Louisville*, 444 F.3d 725, 742 (6th Cir. 2005). We analyze claims of qualified immunity using a three-part test, which requires us to determine: (1) whether a constitutional right was violated; (2) whether that right was clearly established and one of which a reasonable person would have known; and (3) whether the official's action was objectively unreasonable under the circumstances. *Williams v. Mehra*, 186 F.3d 685, 691 (6th Cir. 1999) (en banc). Summary judgment is granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

### A. Fourth Amendment Malicious Prosecution Claim against Popp

Popp argues he should have been granted qualified immunity on the malicious prosecution claim because there was no Fourth Amendment violation. We agree, because Popp did not make the decision to charge Kinkus, and there is no proof in the record that Kinkus presented false information to the prosecutor.

This Court has held that a police officer cannot be liable for Fourth Amendment malicious prosecution when he did not make the decision to bring charges, as long as the information he submitted to the prosecutor is truthful. *See Skousen v. Brighton High Sch.*, 305 F.3d 520, 529 (6th

-6-

Cir. 2002) (holding that a police officer "cannot be held liable for malicious prosecution when he did not make the decision to prosecute [the plaintiff]"); *see also McKinley v. City of Mansfield*, 404 F.3d 418, 444 (6th Cir. 2005) ("*Skousen*, in which the plaintiff alleged that a police officer had falsely accused her, clearly forecloses a malicious prosecution claim based solely on officers' turning over evidence to the prosecuting authorities.").

Popp had no role in choosing to prosecute Kinkus. Prior to Prosecutor Thomas's charging decision, Popp's actions consisted only of completing a police report, signing a blank criminal complaint form that did not recommend any particular charge, and soliciting a written report from Bailey. These documents were ultimately forwarded to Prosecutor Thomas for his discretionary review of the evidence and charging discretion. No evidence suggests Popp ever consulted with or pressured Prosecutor Thomas to file charges.[5]

Moreover, Popp's police report did not contain false information. The police report stated that Kinkus yelled and directed vulgarities at Popp and Bailey as they sought to inquire as to why the jeep was completely blocking Fayette Street. These facts were substantiated by the factual findings of the trial judge at Kinkus's criminal trial, which are subject to collateral estoppel. *See Fridley v. Horrighs*, 291 F.3d 867, 875 (6th Cir. 2002) (providing that collateral estoppel applies when "the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such

---

[5] The facts of *Skousen* are substantially similar. In *Skousen*, the plaintiff was charged and acquitted of domestic assault, and later filed a § 1983 claim alleging Fourth Amendment malicious prosecution against the investigating officer. The actions of the police officer defendant consisted of completing a police report detailing his investigation of an alleged assault involving the plaintiff, and then submitting the police report and a medical report to the prosecutor's office. *Skousen*, 305 F.3d at 525. We found that the plaintiff's malicious prosecution claim failed because she "offered no evidence . . . supporting her claim that [the defendant] caused her to be prosecuted," and there was "no evidence that [the defendant] made or even was consulted with regard to the decision to prosecute [the plaintiff]." *Id*. at 529.

issue, and [] the issue was fully and fairly litigated in state court"). The facts surrounding the incident were fully and fairly litigated in the state criminal proceeding, and among the witnesses who testified were Popp, Bailey, and Kinkus. Furthermore, the facts concerning Kinkus's speech on the day of the flood were necessary to the state court's determination of whether Kinkus committed disorderly conduct. *See Bentley v. Grange Mut. Cas. Ins. Co.*, 694 N.E.2d 526, 530 (Ohio Ct. App. 1997) (providing that under Ohio law, collateral estoppel applies to facts that: "(1) [were] actually and directly litigated in the prior action, (2) [were] passed upon and determined by a court of competent jurisdiction, and (3) when the party against whom collateral estoppel is asserted was a party in privity with a party to the prior action").

Thus, Kinkus cannot contest the accuracy of Popp's police report which served as the basis for Prosecutor Thomas's decision to bring the disorderly conduct charge. Since Popp supplied only truthful information to Prosecutor Thomas, he cannot be subject to a malicious prosecution claim. *See McKinley*, 404 F.3d at 444 (holding that the defendant could not be liable for malicious prosecution where the plaintiff "present[ed] no evidence suggesting that defendants conspired with, influenced, or even participated in, [the prosecutor]'s decision to bring charges against him"); *Darrah v. City of Oak Park*, 255 F.3d 301, 312 (6th Cir. 2001) (dismissing the plaintiff's contention that the defendant police officer caused the state court to find probable cause because "based on the facts alleged by [the plaintiff] and the information in the police report, there is no indication that [the defendant]'s report misled the court in any way")

Accordingly, the district court erred in denying Popp qualified immunity on the malicious prosecution claim and granting summary judgment for Kinkus on that claim.

**B. First Amendment Retaliatory Prosecution Claim against Popp and Anderson**

Popp and Anderson argue they should have been granted qualified immunity on the First Amendment retaliatory prosecution claims because there was not a constitutional violation. We agree.

An essential element of a First Amendment retaliatory prosecution claim is retaliatory animus. *See Hartman v. Moore*, 547 U.S. 250, 260 (2006) (providing that "the plaintiff in a retaliatory-prosecution claim must prove the elements of retaliatory animus as the cause of injury"); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998) (providing that a plaintiff must prove in a First Amendment retaliation claim that "the adverse action was motivated at least in part as a response to the exercise of the plaintiff's constitutional rights").[6] Here, Kinkus clearly cannot succeed in proving the animus element as to either Popp or Anderson. As previously explained, there can be no animus under *McKinley*. *See McKinley*, 404 F.3d at 444.

With respect to Popp, there can be no animus because the allegations in his police report were true, and we are collaterally estopped from reaching any different conclusion. Contrary to the district court's conclusion, the one-month lapse between the incident and the disorderly conduct charge does not suggest animus. There is not a shred of evidence in the record to support the district court's speculation that Anderson "could have relayed to [] Popp the various disparaging comments that [Kinkus] made regarding the Yorkville police." *Kinkus*, 476 F. Supp. 2d at 838. Such speculation does not allow Kinkus to avoid summary judgment.

---

[6]To prove a First Amendment retaliation claim, a plaintiff must also demonstrate that he was engaged in a constitutionally protected activity and that an adverse action caused him to suffer an injury that would likely chill a person of ordinary firmness from continuing to engage in that activity. *Bloch*, 156 F.3d at 678. In a First Amendment retaliatory prosecution claim, a plaintiff must prove "want of probable cause." *Hartman*, 547 U.S. at 265; *see also Barnes v. Wright*, 449 F.3d 709, 719 (6th Cir. 2006).

As for Anderson, there is no animus because there is no evidence in the record that he ordered or ever suggested that Popp lie in the police report. Thus, contrary to the district court's conclusion, it is immaterial that Anderson testified that the charges were brought against Kinkus "only in part" because of statements he made previously regarding the Yorkville Police Department. There is no evidence in the record that he instructed Popp to lie. And, again, a state court trial judge found that the information Popp provided to the prosecutor was true.

Accordingly, the district court erred in denying Popp and Anderson qualified immunity on the retaliatory prosecution claim and granting summary judgment for Kinkus on his claim against Anderson, because no First Amendment violation lies under Kinkus's version of the facts. *See Saucier v. Katz*, 533 U.S. 194, 201 ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.").

### C. Municipal Liability Claim against Yorkville

Defendants request that we exercise "pendent appellate jurisdiction" to dismiss the municipal liability issues. We do, because absent any constitutional violation, there can be no municipal liability. *See Brennan v. Twp. of Northville*, 78 F.3d 1152, 1158 (6th Cir. 1996).[7] Furthermore, even

---

[7] The dissent asserts that we cannot entertain the municipal liability claim. However, Yorkville gave notice that it is a party to the appeal, given that Yorkville is listed as a party in the caption of the notice of appeal. *See* Fed. R. App. P. 3(c)(1)(A) (providing that a party's notice of its intent to take the appeal is sufficient if the party is named "in the *caption* or body of the notice"). Second, the notice of appeal "designate[d] the judgment . . . being appealed" under Fed. R. App. P. 3(c)(1)(B) by referencing the district court's March 13, 2007 final judgment. In that decision, the district court, inter alia, granted summary judgment for Kinkus on the municipal liability claim.

Further, in ruling on the municipal liability claim we avoid the needless waste of judicial resources by holding that there can be no municipal liability absent an actual constitutional violation at the hands of either Popp or Anderson. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("If a person has suffered no constitutional injury at the hands of [an] individual

-10-

if there had been a constitutional violation, there was no custom or policy, because, in the first place, Prosecutor Thomas–not Anderson–made the decision to prosecute Kinkus. Yorkville cannot be held liable under a theory of vicarious liability. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be liable on a respondeat superior theory).

Accordingly, the district court erred in denying Yorkville summary judgment on the municipal liability claim and granting summary judgment for Kinkus on that claim.

### III.  CONCLUSION

For the reasons stated above, we **REVERSE** the district court's denial of qualified immunity to Popp on the malicious prosecution claim, **REVERSE** the district court's denial of qualified immunity to Popp and Anderson on the retaliation claims, **REVERSE** the district court's grant of summary judgment for Kinkus on his malicious prosecution claim against Popp and his retaliatory prosecution claim against Anderson, **REVERSE** the district court's grant of summary judgment for Kinkus on Kinkus's municipal liability claim against Yorkville, and **DISMISS** Kinkus's claims for malicious prosecution, retaliation, and municipal liability.

---

police officer, the fact that [municipal policy or custom] might have *authorized* [a constitutional violation] is quite beside the point."); *Floyd v. City of Detroit*, 518 F.3d 398, 411 (6th Cir. 2008) ("Where a court determines that no violation of the plaintiff's constitutional rights occurred, obviously the governmental entity cannot be liable . . . for developing a [policy or] custom that led to a constitutional violation.").

**CLAY, Circuit Judge, dissenting.**  While I agree with the majority that there is insufficient evidence in the record to support Plaintiff Robert Kinkus' ("Kinkus") Fourth Amendment malicious prosecution claim, I do not share the majority's view that Defendants, James Popp ("Popp") and Gary Anderson ("Anderson"), should have been granted qualified immunity on Kinkus' First Amendment retaliatory prosecution claim.  I am also troubled by the majority's *sua sponte* decision to reverse the district court's grant of summary judgment to Kinkus on his municipal liability claim against the Village of Yorkville (the "Village"), given that we lack jurisdiction to review this issue on appeal.  Accordingly, I respectfully dissent.

## I.

We review a district court's denial of qualified immunity *de novo*.  *Logsdon v. Hains*, 492 F.3d 334, 340 (6th Cir. 2007).  Qualified immunity is an affirmative defense that shields government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established federal statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *accord Dorsey v. Barber*, 517 F.3d 389, 394 (6th Cir. 2008).  To determine whether qualified immunity applies for particular state officials, we employ a two-step analysis. *See Scott v. Harris*, 127 S. Ct. 1769, 1774 (2007).  First, we must consider whether, "[t]aken in the light most favorable to the party asserting the injury, . . . the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*.  However, "if a violation could be made out on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right

-12-

was clearly established." *Id*. The ultimate focus of this second inquiry is to determine whether the official "had fair notice that her conduct was unlawful." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (per curiam); *see also Champion v. Outlook Nashville, Inc.*, 380 F.3d 893, 905 (6th Cir. 2004) (requiring the plaintiff to provide "sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of clearly established constitutional rights"). If the law at the time of the official's conduct "did not clearly establish that the [official's] conduct would violate the Constitution, the [official] should not be subject to liability or, indeed, even the burdens of litigation." *Brosseau*, 543 U.S. at 198.

Applying this qualified immunity framework to the facts of this case, I would find that Popp and Anderson are not entitled to qualified immunity on Kinkus' First Amendment retaliatory prosecution claim. However, because there is a genuine issue of material fact regarding whether Popp and Anderson had a retaliatory intent when filing their criminal complaint against Kinkus, I would reverse the district court's grant of summary judgment in favor of Kinkus on this claim and remand the case for trial.

A.

"The threshold inquiry a court must undertake in a qualified immunity analysis is whether plaintiff's allegations, if true, establish a constitutional violation." *Hope v. Pelzer*, 536 U.S. 730, 736 (2002). Construing the facts in the light most favorable to Kinkus, I would find that he has sufficiently alleged that Popp and Anderson violated his First Amendment rights by filing the criminal complaint in retaliation for his vulgar comments to Popp on September 18, 2004 and his prior criticism of the Yorkville Police Department.

To demonstrate a retaliatory prosecution in violation of the First Amendment, a plaintiff

must establish that: (1) he or she engaged in constitutionally protected activity; (2) the defendant brought criminal charges, for which there was an absence of probable cause, against the plaintiff; and (3) the defendant's criminal prosecution of the plaintiff was motivated, at least in part, as a response to the plaintiff's exercise of his or her constitutional rights. *See Hartman v. Moore*, 547 U.S. 250, 256 (2006); *Center for Bio-Ethical Reform, Inc. v. City of Springboro*, 477 F.3d 807, 821 (6th Cir. 2007); *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc); *Bloch v. Ribar*, 156 F.3d 673, 678 (6th Cir. 1998). When viewed in the light most favorable to Kinkus, the parties' submissions establish each of these elements.

First, Kinkus' vulgar comments to Popp on September 18, 2004 and his prior criticisms of the Yorkville Police Department clearly constitute protected speech under the First Amendment. It is well-established that "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston v. Hill*, 482 U.S. 451, 461 (1987); *see also id*. at 462-63 ("The freedom of individuals verbally to oppose or challenge police action without thereby risking arrest is one of the principal characteristics by which we distinguish a free nation from a police state."); *McCurdy v. Montgomery County*, 240 F.3d 512, 520 (6th Cir. 2001) ("Since the day the ink dried on the Bill of Rights, '[t]he right of an American citizen to criticize public officials and policies . . . is central to the meaning of the First Amendment." (quoting *Glasson v. City of Louisville*, 518 F.2d 899, 904 (6th Cir. 1975))). This criticism need not be polite and is protected even if it employs rude and vulgar language. *See Cohen v. California*, 403 U.S. 15, 25-26 (1971) (finding that a state cannot criminalize the use of the expression "fuck the draft"); *Barnes v. Wright*, 449 F.3d 709, 718 (6th Cir. 2006) (finding that the plaintiff's use of "strong" language, including words such as "damn", when confronted by police officers, was

constitutionally protected speech); *Greene v. Barber*, 310 F.3d 889, 895-96 (6th Cir. 2002) (finding that the plaintiff's characterization of police officer as an "asshole" and "stupid" was constitutionally protected speech); *McCurdy*, 240 F.3d at 520 (finding it "well-established that [the plaintiff had a constitutional right to challenge verbally" a police officer's authority by telling the officer that he didn't have to do the "shit" that the officer was ordering him to do); *Sandal v. Larion*, 119 F.3d 1250, 1255 (6th Cir. 1997) (finding that the plaintiff's shouting of "fuck you" at abortion protestors was constitutionally protected speech).

Second, the criminal complaint filed against Kinkus lacked any vestige of probable cause. Probable cause for filing a criminal complaint only exists "if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Henry v. United States*, 361 U.S. 98, 102 (1959); *accord Beck v. Ohio*, 379 U.S. 89, 91 (1964); *Brinegar v. United States*, 338 U.S. 160, 175-76 (1949); *Logsdon*, 492 F.3d at 341. The criminal complaint in this case charged Kinkus with violating Ohio Rev. Code § 2917.11(A)(2), by claiming that Kinkus:

> Did recklessly cause inconvenience, annoyance, or alarm to another by making unreasonable noise or an offensively coarse utterance, gesture, or display or communicating unwarranted and grossly abusive language to any person.

J.A. at 633. The Ohio Supreme Court, however, has clarified that Ohio Rev. Code § 2917.11(A)(2) only prohibits the use of "fighting words," *i.e.*, those which "are likely, by their very utterance, to inflict injury or provoke the average person to an immediate retaliatory breach of the peace." *State v. Hoffman*, 387 N.E.2d 239, 242 (Ohio 1979); *accord State v. Dotson*, 727 N.E.2d 957, 302-03 (Ohio Ct. App. 1999); *see also Chaplinsky v. New Hampshire*, 315 U.S. 568, 571-72 (1942) (establishing the now rather limited "fighting words" exception to the First

-15-

Amendment's broad protection of speech). No reasonable person considering the facts known to Popp and Anderson at the time they filed the criminal complaint would conclude that Kinkus' abusive and vulgar comments constituted "fighting words." Thus, as the state trial court accurately concluded, there was no probable case to support the filing of the disorderly conduct complaint against Kinkus.

Finally, unlike the majority,[8] I find that the parties' pleadings reasonably suggest that Popp and Anderson filed the criminal complaint, at least in part, in retaliation for Kinkus' constitutionally protected vulgar comments on September 18, 2004 and as possible retribution for his prior criticism of the Yorkville Police Department. Indeed, the record reflects that both Popp and Anderson were aware of and not happy about Kinkus' prior criticisms of the police department and about Kinkus' disrespectful comments during the flooding emergency on September 18, 2004. Moreover, the criminal complaint filed against Kinkus focused exclusively upon Kinkus' vulgar speech as the basis for the disorderly conduct charge. *See* J.A. at 633 (accusing Kinkus of "recklessly caus[ing] inconvenience, annoyance, or alarm to another by making *unreasonable noise* or an offensively coarse *utterance*, gesture, or display or *communicating unwarranted and grossly abusive language* to any person" (emphasis added)). In light of this history between the parties and the criminal complaint's targeting of Kinkus'

_____

[8]The majority's analysis of this issue is misguided, particularly with respect to the majority's conclusion that there was no retaliatory animus on the part of Popp and Anderson because the allegations in the criminal complaint are true. *See* Majority Op. at 10. Whether the charges in the complaint are true is irrelevant to whether the complaint was filed for a retaliatory purpose. Indeed, accepting the truth of the charges in the complaint only confirms that Popp and Anderson were likely filing the complaint in retaliation for Kinkus' vulgar comments on the night of the flooding. That the complaint targets Kinkus' offensive, but constitutionally protected, speech does not undermine, but rather affirms Kinkus' contention that the filing of the complaint was motivated by his exercise of First Amendment rights.

-16-

protected speech, I would find that Kinkus has alleged facts, which, if true, demonstrate a violation of the First Amendment.

B.

The second question in the qualified immunity analysis is whether the rights allegedly violated were clearly established at the time of Popp and Anderson's conduct. *See Saucier*, 533 U.S. at 201. "This inquiry, it is vital to note, must be undertaken in light of the specific context of the case, not as a broad general proposition." *Id.*; *accord Scott*, 127 S. Ct. at 1774; *see also Wilson v. Layne*, 526 U.S. 603, 615 (1999) ("[T]he right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established."). If the area of law "is one in which the result depends very much on the facts of each case," it is likely that the right, considered in light of the specific context, will not be deemed "clearly established." *Brosseau*, 543 U.S. at 201. In other words, for a right to be clearly established "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987); *accord Feathers v. Aey*, 319 F.3d 843, 848 (6th Cir. 2003). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640.

In the instant case, I would find that the First Amendment rights allegedly violated by Popp and Anderson were clearly established at the time of their conduct. The First Amendment freedom to criticize police officials without fear of prosecution had been firmly established for several years prior to the filing of the criminal complaint against Kinkus in 2004. *See, e.g., Hill*,

-17-

482 U.S. at 461 ("[T]he First Amendment protects a significant amount of verbal criticism and challenge directed at police officers."); *Terminello v. City of Chicago*, 337 U.S. 1, 4 (1949) ("[A] function of free speech under our system of government is to invite dispute. It may indeed best serve its high purpose when it induces a condition of unrest, creates dissatisfaction with conditions as they are, or even stirs people to anger. . . . That is why freedom of speech, though not absolute, is nevertheless protected against censorship or punishment, unless it is shown likely to produce a clear and present danger of a serious substantive evil that rises far above public inconvenience, annoyance, or unrest."); *McCurdy*, 240 F.3d at 520 ("There can be no doubt that the freedom to express disagreement with state action, without fear of reprisal based on the expression, is unequivocally among the protections provided by the First Amendment."); *Barrett v. Harrington*, 130 F.3d 246, 264 (6th Cir. 1997) ("[I]t is well established that a public official's retaliation against an individual exercising his or her First Amendment rights is a violation of § 1983."). Any reasonable police officer should have known that charging Kinkus with disorderly conduct in retaliation for his critical speech, as Popp and Anderson did in this case, would violate Kinkus' First Amendment rights. Accordingly, I would hold that Popp and Anderson are not entitled to qualified immunity with respect to Kinkus' retaliatory prosecution claim.

C.

While I would reject Popp and Anderson's requests for qualified immunity, I would nevertheless reverse the district court's ultimate grant of summary judgment in favor of Kinkus on his retaliatory prosecution claim. A grant of summary judgment is proper only "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.

R. Civ. P. 56(c). In the instant case, however, there is a disputed issue of material fact regarding Kinkus' retaliatory prosecution claim, namely Popp's and Anderson's intent in filing the disorderly conduct complaint. Kinkus alleges that this criminal complaint was retaliation for his criticism of the police. Popp and Anderson claim that the complaint was a legitimate response to the disorderly *behavior* of Kinkus during the flooding emergency. As disputes "involving proof a defendant's intent seldom lend themselves to summary disposition," *Center for Bio-Ethical Reform*, 477 F.3d at 823 (quoting *Bloch*, 156 F.3d at 682), I would reverse the district court's grant of summary judgment to Kinkus on this claim and remand the case for trial so that a jury could resolve this disputed issue of material fact.

**II.**

In addition to my concerns about the majority's qualified immunity analysis, I am disturbed by the majority's decision to *sua sponte* pronounce a holding on an issue—whether the Village should be entitled to summary judgment on Kinkus' municipal liability claim—that was not raised in Popp and Anderson's notice of appeal nor properly asserted by them in their briefs.

Rule 3(c) of the Federal Rules of Appellate Procedure provides that a party's "notice of appeal must . . . designate the judgment, order, or part thereof being appealed." Fed. R. App. P. 3(c)(1)(B). This rule, whose requirements are "jurisdictional in nature," *Smith v. Barry*, 502 U.S. 244, 248 (1992); *accord Torres v. Oakland Scavenger Co.*, 487 U.S. 312, 314-315 (1988), "limit[s] this Court's appellate review to issues designated in the notice of appeal." *United States v. Glover*, 242 F.3d 333, 335 (6th Cir. 2001). In particular, "[i]f an appellant . . . chooses to designate specific determinations in his notice of appeal—rather than simply appealing from the entire judgment—only the specified issues may be raised on appeal." *McLaurin v. Fischer*, 768

F.2d 98, 102 (6th Cir. 1985); *accord United States v. Univ. Mgmt. Servs., Inc.*, 191 F.3d 750, 756

(6th Cir. 1999) (Suhrheinrich, J.); *Caldwell v. Moore*, 968 F.2d 595, 598 (6th Cir. 1992)

(Suhrheinrich, J.) ("Under Rule 3(c)[,] where a notice of appeal specifies a particular order, only

the specified issues related to that order may be raised on appeal.").

  In the instant case, Popp and Anderson's notice of appeal states:

> Notice is hereby given that Defendants James Popp ("Popp") and Gary Anderson
> ("Anderson") hereby appeal to the United States Court of Appeals for the Sixth
> Circuit from this Court's final judgments 1) denying Popp and Anderson's motion
> for summary judgment on the basis of qualified immunity entered in this action on
> [March 13, 2007] and 2) granting of Plaintiff's summary judgment on his First and
> Fourth Amendment claims, entered in this action on [September 28, 2006] and
> which became final when this Court denied Popp and Anderson's motion for
> summary judgment on the basis of qualified immunity on March 13, 2007 and was
> incorporated in the judgment entered on March 13, 2007.

J.A. at 55. While the notice does list the Village as a party to the appeal in its caption, it does not

indicate that Defendants are appealing the district court's ruling regarding the Village's municipal

liability. Rather, this notice clearly limits the appeal to the district court's denial of Popp and

Anderson's motions for qualified immunity and its grant of summary judgment to Kinkus on his

First and Fourth Amendment claims against them. Consequently, under our precedent, the issue

of the Village's municipal liability is not properly within our appellate jurisdiction for this case.

  Even if we could construe the notice of appeal as permitting us to consider the issue of the

Village's municipal liability on appeal, I would still find the majority's discussion of it to be

improper because of Popp and Anderson's failure to properly raise this issue in their arguments on

appeal. This issue of the Village's municipal liability was not raised in Popp and Anderson's

initial brief, but rather appeared for the first time in their reply to Kinkus' response brief. Kinkus

was never afforded an opportunity to defend the district court's decision on this point and the

issue was never discussed at oral argument. Under our longstanding precedent, such an issue—even if we had jurisdiction to consider it—should have been deemed waived. *See*, *e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) (collecting cases); *Novosteel SA v. United States*, 284 F.3d 1261, 1274 (Fed. Cir. 2002) ("Raising the issue for the first time in a reply brief does not suffice; reply briefs *reply* to arguments made in the response brief—they do not provide the moving party with a new opportunity to present yet another issue for the court's consideration. Further the non-moving party ordinarily has no right to respond to the reply brief, at least not until oral argument. As a matter of litigation fairness and procedure, then, we must treat [such issues] as waived."). Moreover, it is not clear that Popp or Anderson even have standing to raise such an issue as it concerns the liability of the Village, as opposed to their own individual liability, for the alleged infringement upon Kinkus' constitutional rights. Accordingly, I would not express any opinion with respect to this issue and would leave intact the district court's summary judgment decision regarding the Village's municipal liability.

**III.**

For the foregoing reasons, I respectfully dissent.