RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 20a0350p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

BUCK RYAN,

> *Plaintiff-Appellant*,

*v.*

No. 19-6447

DAVID A. BLACKWELL, JOSEPH REED, DEREK LANE,
and MIKE FARRELL, in their individual capacities,

> *Defendants-Appellees*.

---

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
No. 5:19-cv-00188—Karen K. Caldwell, District Judge.

Argued:  October 9, 2020

Decided and Filed:  November 3, 2020

Before:  SUHRHEINRICH, LARSEN, and READLER, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Robert L. Abell, ROBERT ABELL LAW, Lexington, Kentucky, for Appellant. Bryan H. Beauman, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, for Appellees.  **ON BRIEF:**  Robert L. Abell, ROBERT ABELL LAW, Lexington, Kentucky, for Appellant.  Bryan H. Beauman, Jessica R. Stigall, Donald C. Morgan, STURGILL, TURNER, BARKER & MOLONEY, PLLC, Lexington, Kentucky, William E. Thro, UNIVERSITY OF KENTUCKY, Lexington, Kentucky, for Appellees.

---

**OPINION**

---

SUHRHEINRICH, Circuit Judge.  Buck Ryan is a professor of journalism at the University of Kentucky.  Following an audit, the University accused him of misusing department resources to make a larger profit off a textbook he had authored.  He was asked to resign from his position as a tenured professor, but he refused to do so.  Ryan brought suit against Defendants David Blackwell, Joseph Reed, Derek Lane, and Mike Farrell, alleging, amongst other things, that they retaliated against him for asserting his due process and First Amendment rights after he refused to resign.  The district court dismissed Ryan's claim under Federal Rule of Civil Procedure 12(b)(6).  On appeal, Ryan alleges that the district court misconstrued his complaint, that he plausibly alleged due process retaliation, and that his speech was on a matter of public concern.  He argues that he did, therefore, meet the Rule 12(b)(6) requirements to plausibly state a claim  Blackwell, Reed, Lane, and Farrell argue that even if they did violate Ryan's rights, they are entitled to qualified immunity.  For the reasons that follow, we AFFIRM.

**I.**

In this 42 U.S.C. § 1983 action, Plaintiff Buck Ryan challenges the district court's dismissal under Federal  Rule Civil Procedure 12(b)(6) of his First Amendment and due process retaliation claims against Defendants David Blackwell, Joseph Reed, Derek Lane, and Mike Farrell (collectively "Defendants").

At the district court, Ryan plead four causes of action, but only the two federal claims are at issue here, both of which pertain to retaliation for Ryan's allegedly protected activity.  First, Ryan asserts he was retaliated against when he refused to resign his position as a tenured professor at the University of Kentucky and asserted his property interest in his continued employment there as protected by the Due Process Clause.  Second, Ryan claims he was retaliated against for exercising his First Amendment right to speak on matters of public concern.

The district court correctly held that Ryan's due process rights were not violated.  He was given due process when the faculty committee conducted an investigation into his conduct and

made its recommendation not to terminate Ryan's employment. Blackwell's statement to the press was not a sufficiently chilling action that it would deter a person of ordinary firmness from refusing to resign, and therefore cannot be considered retaliation.

The district court also correctly determined that Ryan failed to state a claim for First Amendment retaliation because the facts alleged do not implicate a matter of public concern. There is very little by way of information about the context and content of Ryan's protests against the University in his complaint, but even with the supplemental information provided in his reply and subsequent briefing, the subject of his speech does not amount to a matter of public concern.

Furthermore, because Ryan failed to allege a violation of a clearly established constitutional right, he is not able to overcome qualified immunity.

## II.

Buck Ryan is a tenured associate professor of journalism at the University of Kentucky ("UK"). On or around April 30, 2018, an audit report conducted by Joseph Reed was presented to Ryan by then-Dean Dan O'Hair and interim director of the journalism school, Mike Farrell. The audit report focused primarily on Ryan's use of his book, *Writing Baby, Editing Dog and You: A Friendly Place to Begin Improving Your Writing*, in his courses. The audit claimed that Ryan had generated more than a $6,000 profit by using UK's contract rates and tax exempt status to obtain lower printing rates for his book, requiring his book for his courses, and selling it to students at a markup at local bookstores. All of this, according to the audit, violated UK policy. *Id.* Ryan responded to O'Hair and Farrell by outlining the ways in which he believed the audit contained inaccurate, false, and defamatory information. He requested that the audit be voided. *Id.*

At a later meeting, O'Hair demanded that Ryan resign his position. Ryan refused to resign, at which point Blackwell, UK's provost, began formal administrative proceedings to terminate Ryan's employment as a tenured faculty member. *Id.* Blackwell also issued the following statement—which Ryan alleges is defamatory—to a local newspaper in response to a request for comment on the termination proceedings:

> As a matter of policy, we do not discuss personnel matters in any detail. The audit in question is a matter of public record. It speaks for itself. What is most egregious

about the audit's findings is the fact that Professor Ryan stole from students. And he used university resources to do it. Both are violations of university policy; more importantly, both violate the trust that students and others place in us. That violation of trust is why we've had to take this step to seek the termination of a faculty member, a move we don't make lightly but one that we must regrettably take. We will now follow a process led by faculty that is, as it should be, thorough, comprehensive and designed to be fair to all involved.

In August 2018, the UK Senate Advisory Committee on Privilege and Tenure recommended against further termination proceedings. Ryan later challenged Blackwell and University President Eli Capilouto "at a public forum . . . as to why they attempted to fire him with no grounds do so and defamed him in this process." Ryan alleges that in retaliation for speaking out against his termination, Lane (Interim Dean of UK's College of Communication and Information) and Farrell made defamatory claims, removed him from his teaching responsibilities, and constructively discharged him from the UK faculty.

Ryan filed suit in district court on April 29, 2019, alleging four counts of violations of state and federal law. First, Blackwell's statement to the press was retaliation for Ryan's assertion of his constitutionally protected due process rights when he refused to resign his position. Second, that statement constitutes defamation per se under Kentucky law. Third, the audit report itself is defamatory and casts Ryan in a false light. And fourth, the further efforts to coerce him into resigning constitute retaliation for Ryan's assertion of his due process and First Amendment rights.

The district court dismissed the two federal claims under Rule 12(b)(6) for failure to state a claim. It declined to exercise supplemental jurisdiction over the remaining state law claims. On appeal, we are asked to review only the dismissal of the due process and First Amendment retaliation claims.

**III.**

We review a district court's decision to grant a motion to dismiss de novo. *Bates v. Green Farms Condo. Ass'n*, 958 F.3d 470, 479–80 (6th Cir. 2020). To survive a motion to dismiss the complaint must include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When determining whether Ryan's complaint meets this standard "we accept as true its factual allegations and draw all reasonable inferences in his

favor, but we disregard any legal conclusions." *Rudd v. City of Norton Shores*, — F.3d —, No. 19-1226, 2020 WL 5905062, at *4 (6th Cir. 2020); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the complaint "does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (cleaned up).

Ryan alleges two retaliation claims under 42. U.S.C. § 1983, which allows for plaintiffs to recover damages for violations of the Constitution or a federal statute. *Boler v. Earley*, 865 F.3d 391, 401 (6th Cir. 2017). Though some governmental actions standing on their own may not be violations of the Constitution, "[i]t is well established that [they] . . . may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right." *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999) (en banc). Ryan alleges that Blackwell's statement to the press, the termination efforts, and the changes to his teaching responsibilities are all unconstitutional retaliatory actions for his refusal to resign and his public statements regarding the matter.

**A.**

There are three elements to a retaliation claim: (1) "the plaintiff engaged in conduct that is protected by the Constitution or by statute," (2) "the defendant took an adverse action against the plaintiff," and (3) "this adverse action was taken (at least in part) because of the protected conduct." *Thaddeus-X*, 175 F.3d at 386–87.

This matter comes before us on appeal from a motion to dismiss for failure to state a claim underRule 12(b)(6). The pleading standard is generally construed quite liberally. *See Sam Han v. Univ. of Dayton*, 541 F. App'x 622, 625 (6th Cir. 2013). A complaint must contain enough "factual matter" to raise a "plausible" inference of wrongdoing. *Southfield Ltd. P'ship v. Flagstar Bank, F.S.B.*, 727 F.3d 503, 504 (6th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). "The plausibility of an inference depends on a host of considerations, including common sense . . . " *Id.* Common sense would dictate that Ryan's refusal to resign was done with the knowledge that his case would likely be put before the appropriate faculty body for further investigation. There is no reason to think

that there are some magic words Ryan would have needed to use to assert his due process rights. Given the context of his refusal to resign, it seems at least plausible that he had asserted his due process rights. As we are required at the Rule 12(b)(6) stage to construe the complaint generously towards the plaintiff, we proceed as if he had asserted his rights.

Ryan first alleges that Blackwell brought termination proceedings against him when he asserted his due process rights by refusing to resign his position. Tenured university professors may not be fired without a hearing and an opportunity to challenge the grounds for their termination. *See Johnston-Taylor v. Gannon*, 907 F.2d 1577, 1581 (6th Cir. 1990). Here, however, Ryan was not denied those rights. When he refused to resign, the matter was handed over to the proper faculty committee, which ultimately recommended against terminating him. Ryan cannot fairly assert that initiation of these formal termination proceedings were themselves retaliation when such proceedings were precisely what he was entitled to receive when he refused to resign. He received due process, which is all he is entitled to under the Due Process Clause.

Ryan next alleges that Blackwell's press statement was also retaliation for his refusal to resign. The district court emphasized that Ryan's refusal to resign did not inherently constitute an assertion of his due process rights and that the complaint fails to otherwise adequately address this issue. On a motion to dismiss, however, the district court is required to "construe the complaint in the light most favorable to the plaintiff." *Ziegler v. IBP Hog Mkt., Inc.*, 249 F.3d 509, 512 (6th Cir. 2001). Here, doing so requires us to construe Ryan's refusal to resign as an assertion of his due process rights. It does not, however, require us to accept Ryan's legal conclusion that the statement to the press is a form of retaliation.

In the context of public employment, an adverse action is one that would "likely chill a person of ordinary firmness from continuing to engage in that activity." *Thaddeus-X*, 175 F.3d at 398. Though that action "may include harassment or publicizing facts damaging to a person's reputation," *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 724 (6th Cir. 2010), the action here hardly seems enough to chill an ordinary person from refusing to resign a tenured professorship. *See also Thaddeus-X*, 175 F.3d at 397. In *Samad v. Jenkins* this court found that a letter threatening to reveal accurate collected information about a tenured professor was not an adverse employment action. 845 F.2d 660, 663 (6th Cir. 1988). Particularly given the reference to the audit report in

Blackwell's statement, this single statement to the press does not rise to the standard of an adverse action.  Furthermore, though the determination of whether an action is adverse is an objective standard, it is worth noting that Ryan does not allege even that *he* was chilled from asserting his due process rights.

Ryan also contends that the continuation of the audit report after the faculty committee recommended against termination and the failure to retract the press statement are also retaliatory actions.  There is no case law to support these claims.  It seems illogical to suggest that the continuation of a university investigation into Ryan's alleged financial misconduct that was already under way could possibly be retaliatory.  Similarly, Ryan points to no law suggesting that Blackwell had any obligation to retract his statement.  This may perhaps be an issue for his state law defamation claim, but that matter is not on appeal before this court.

**B.**

We next consider whether Ryan suffered retaliation for asserting his First Amendment rights when (1) the University continued its audit, (2) Blackwell did not retract his press statement, and (3) Ryan was removed from teaching a course in the spring semester.  We find that he did not because his speech was not protected by the First Amendment.

In order to establish a First Amendment retaliation claim under § 1983, the plaintiff must demonstrate: (1) he engaged in constitutionally protected speech, (2) defendant's adverse action caused an injury that would chill a person of ordinary firmness from continuing the activity, and (3) that action was motivated at least in part by the plaintiff's exercise of his constitutional rights. *Dye v. Office of the Racing Comm'n*, 702 F.3d 286, 294 (6th Cir. 2012).  If the plaintiff is a public employee, we apply a two-step analysis in determining whether the action taken against him violates the First Amendment.  First, we must determine whether the employee was speaking as a government employee (rather than in his capacity as a private citizen) and whether the statement constitutes speech on a matter of public concern.  *Connick v. Myers*, 461 U.S. 138, 140 (1983); *Bennett v. Metro Gov't of Nashville & Davidson Cnty.*, — F.3d —, No. 19-5818, 2020 WL 5905067, at *4 (6th Cir. 2020).  If so, we then apply a balancing test to determine whether the interest in protecting speech on issues of public concern outweighs the interest of the government

as an employer "in promoting the efficiency of the public services it performs through its employees." *Bennett*, — F.3d —, 2020 WL 5905067, at *4 (internal quotation marks omitted). "These two steps are sub-elements of the first element of the First Amendment retaliation framework." *Id.*

Whether the employee's speech addressed a matter of public concern is a matter of law. *Van Compernolle v. City of Zeeland*, 241 F. App'x 244, 249 (6th Cir. 2007). In making this determination the court must consider the "content, form, and context of a given statement, as revealed by the whole record." *Connick*, 461 U.S. at 147–48.

The district court correctly dismissed this claim because even taking the facts of the complaint as true, Ryan does not allege facts from which the court could plausibly infer that his speech involved a matter of public concern, and therefore Ryan has failed to state a claim for First Amendment retaliation. "Speech is of 'public concern' if it involves issues about which information is needed or appropriate to enable members of society to make informed decisions about the operation of their government." *Farhat v. Jopke*, 370 F.3d 580, 590 (6th Cir. 2004) (citation omitted). We consider not only the speaker's interest in speaking, but also the public's interest in receiving information. *Banks v. Wolfe Cnty. Bd. of Educ.*, 330 F.3d 888, 896 (6th Cir. 2003) (citation omitted). In *Connick*, the Court cautioned us that we should not presume that any matters occurring in a government office are of a public concern merely because they involve the government, 461 U.S. at 149, and this court has explicitly rejected the notion that "internal personnel disputes or complaint about an employer's performance" constitute a matter of public concern, *Brandenburg v. Hous. Auth. of Irvine*, 253 F.3d 891, 898 (6th Cir. 2001).

Ryan relies on this court's decision in *Bonnell v. Lorenzo*, which held that speech related to a university's sexual harassment policy was a matter of public concern. 241 F.3d 800, 821 (6th Cir. 2001). But this case is more comparable to *Golembiewski v. Logie*, where this court found that speech regarding an employee attendance policy was not a matter of public concern but rather an internal issue that "only the employees themselves would be concerned about." 516 F. App'x 476, 477 (6th Cir. 2013). Here, Ryan's complaint alleges that he "challenged Blackwell and university president Eli Capilouto as to why the attempted to fire him." Though he does not provide the specific content of his speech, he alleges it was about "the initiation of proceedings to

terminate his tenure and employment."  Ryan himself explicitly refers to the matter as "one of the most explosive *internal* issues at the University of Kentucky in years."  Without more detail that would suggest broader public concerns, Ryan's complaint seems to allege only the type of speech that squarely falls in the realm of an internal employee dispute.

Though he alleges the issue became widely discussed amongst UK faculty, this is not sufficient to elevate it to a matter of public concern.  *See Van Compernolle*, 241 F.App'x at 250 (finding that a "group effort" amongst employees is no less an internal personnel matter than advocacy of just one employee); *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 966 (6th Cir. 2002) (holding that a letter critiquing a government employee selection process was not a matter of public concern despite touching on implications beyond its author).

Because Ryan's speech was not on a matter of public concern and therefore not protected, we need not move on to the second two elements of a retaliation claim.  *See Brandenburg*, 253 F.3d at 898.  Thus, though Ryan states multiple times in his complaint that his speech was on a matter of public concern, that is a conclusory allegation we need not accept.  *See Ctr. for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 369 (6th Cir. 2011) ("[C]onclusory recitals of the elements of a claim, including legal conclusions couched as factual allegation, 'do not suffice.'" (quoting *Iqbal*, 556 U.S. at 683)).  The *facts* alleged in the pleadings are insufficient to plausibly state a claim.  As this is the threshold issue for a First Amendment retaliation claim, we need not decide whether Ryan suffered an adverse employment action in retaliation for his speech.[1]

## C.

Though the district court did not discuss qualified immunity, this court may affirm the district court's decision on any grounds supported by the record.  *Wallace v. Oakwood Healthcare, Inc.*, 954 F.3d 879, 886 (6th Cir. 2020).  The qualified immunity doctrine prevents government actors from being held liable for "conduct [that] does not violate clearly established statutory or

---

[1]An adverse action may occur when there is a significant diminishment in material job duties.  *Kocsis v. Multi-Care Mgmt.*, 97 F3d 876, 885–86 (6th Cir. 1996).  The parties dispute whether Ryan's removal from teaching responsibilities constitutes an adverse action.  Though Defendants indicated that Ryan was removed due to his poor performance ratings, this is a question of fact for a jury.  However, because Ryan failed to allege that his speech was on a matter of public concern, we need not address whether his removal from teaching was a retaliatory action.

constitutional rights of which a reasonable person would have known." *Bible Believers v. Wayne Cnty.*, 805 F.3d 228, 257 (6th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "For a right to be clearly established the constitutionality of the officer's conduct must have been beyond debate in the particular circumstances before him." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019) (cleaned up). Only when "every reasonable official" would have known his conduct violates that right should the courts deny protection to that official. *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citation omitted). This does not require that "the very action in question has previously been held unlawful," but it does require "that in the light of pre-existing law the unlawfulness must be apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

While it is clearly established that a public official cannot retaliate against an individual for an exercise of his constitutional rights, it is not clearly established in either Sixth Circuit or Supreme Court case law that the actions allegedly taken against Ryan meet the rigorous standard needed to overcome qualified immunity. Ryan has not shown that the actions taken against him would chill a person of ordinary firmness, nor has he sufficiently demonstrated that his speech constituted a matter of public concern.

**IV.**

We AFFIRM the district court's dismissal of Ryan's complaint.